# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

DENNIS ALAN KELLETT,

     *Plaintiff,*

v.                          CASE NO. 13-cv-12884

COMMISSIONER OF         DISTRICT JUDGE LAURIE J. MICHELSON
SOCIAL SECURITY,         MAGISTRATE JUDGE CHARLES E.
                                 BINDER

     *Defendant.*

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence does not support the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **GRANTED**, that Defendant's Motion for Summary Judgment be **DENIED**,  that the findings of the Commissioner be **REVERSED** and the case **REMANDED** for further proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

1

## II.   REPORT

### A.   Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claims for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") benefits. This matter is currently before the Court on cross-motions for summary judgment. (Docs.14, 15.)

Plaintiff Dennis Kellett was 50 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 9 at 44.) Plaintiff's work history includes employment as a CAD designer (Tr. at 53.) Plaintiff filed the instant claims on May 11, 2010 alleging that he became unable to work on January 1, 2008. (Tr. at 44.) The claims were denied at the initial administrative stages. (*Id*.)  In denying Plaintiff's claims, the Commissioner considered depression, anxiety, alcohol dependence, bipolar disorder, diabetes, hypertension and hyperlipidemia. (Tr. at 46.)  On February 1, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Julia D. Gibbs, who considered the application for benefits *de novo*. (Tr. at 61-121.)  In a decision dated February 10, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 44-54.) On March 2, 2012, Plaintiff requested a review of this decision. (Tr. at 40.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v.*

*Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on May 3, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 30-32.)  On July 2, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

## B.    Standard of Review

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). *See also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528

4

(6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). *See also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial

evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). *See also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. *See also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party"); *Van Der Maas v. Comm'r of Soc.*

6

*Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

### C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994). *Accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the DIB program of Title II, 42 U.S.C. §§ 401 *et seq*., and the SSI program of Title XVI, 42 U.S.C. §§ 1381 *et seq*. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, Federal Disability Law and Practice § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do

basic work activities," benefits are denied without further analysis.

Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920. *See also Heston,* 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work[.]" *Jones,* 336 F.3d at 474 (cited with approval in *Cruse,* 502 F.3d at 540). If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

   **D.    ALJ Findings**

8

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through September 30, 2012, and that Plaintiff had not engaged in substantial gainful activity since January 1, 2008, the alleged onset date. (Tr. at 46.)  At step two, the ALJ found that Plaintiff's depression, anxiety, alcohol dependence, and bipolar disorder were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 46-47.)  At step four, the ALJ found that Plaintiff could perform his past relevant work as a CAD designer. (Tr. at 53.) The ALJ also found that as of the alleged disability onset date, Plaintiff was 46 years old, which put him in the "younger individual age 18 to 49" category. *See* 20 C.F.R. §§ 404.1563 and 416.963. At step five, the ALJ found, in the alternative, considering Plaintiff's age, education, work experience and residual functional capacity, there were other jobs existing in significant numbers in the national economy that Plantiff could also perform. (Tr. at 53.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 54.)

**E.     Administrative Record**

A review of the relevant medical evidence contained in the administrative record indicates that Plaintiff has a history of mental impairments, including depression, anxiety, bipolar disorder and alcohol dependence.[2] (Tr. at 49-52.)  Plaintiff sporadically sought treatment for both his

---

[2]Because Plaintiff's arguments for remand are confined to the Commissioner's determination regarding his mental impairment, a recitation of Plaintiff's treatment for his diabetes, hypertension, and hyperlipidemia,

psychiatric and substance abuse conditions beginning as early as November 2007.  (Tr. at 653.)

In April 2010, Plaintiff was admitted through the emergency department at McLaren Regional Medical Center after complaining of suicidal thoughts. (Tr. at 452-466.)  Upon his admission, Plaintiff complained of

> depression, anxiety, severe mood swings, racing thoughts, non-stop drinking alcohol such as half-gallon of Jim Beam on daily [sic] for 27 years, suicidal ideas with hanging or overdose of pills.

(Tr. at 455.)

Dong Yoo, M.D. conducted a mental status examination finding Plaintiff to be oriented to time, person and place, describing him as a non-stop talker, rumbling [sic] incessantly, with labile affect (smiling and laughing and crying profusely the next minute) and poor insight.  (*Id.*) Dr. Yoo diagnosed Plaintiff with bipolar disorder, depression and alcohol dependency, admitted him for alcohol dependency and stabilization of bipolar disorder, and prescribed both Trileptal and Lithium to control Plaintiff's bipolar disorder.   (Tr. at 453-455.)

Upon discharge, Plaintiff sought treatment at Oakland Psychological Clinic.  (Tr. at 504-520.)  Plaintiff treated with Mona Sander, a licensed clinical social worker.  (Tr. at 510-520.) Ms. Sander noted in a Mental Status Assessment completed in May 2010 that Plaintiff's mood was depressed, anxious and irritable, his attitude was mildly guarded, his speech was loud, his motor activity was hyper and agitated, and his thought process was tangential and very fast.  She further noted that he could not sit down and was pacing during the evaluation. (Tr. at 515.)  In addition,

---

which the ALJ found to be non-severe impairments, is unnecessary.

his affect was noted as sad, anxious and labile and he was described as "ready to explode;" his thought content was obsessive and described as persistent. (Tr. at 516.)  Ms. Sander also assessed Plaintiff as having poor coping skills and limited insight.  (Tr. at 517.)

Plaintiff also treated with Gerald Pope, M.D., a psychiatrist with Oakland Psychological Clinic . (Tr. at 504-509.)  In July 2010, Dr. Pope again diagnosed Plaintiff with bipolar disorder and alcohol dependence and noted Plaintiff was taking Trileptal, Lithium, Trazadone and Antabuse. (Tr. at 504.)

On October 4, 2010, Matthew Dickson, Ph.D., a licensed psychologist, examined Plaintiff for the purposes of his disability claim. (Tr. at 522-525.)  Plaintiff reported to Dr. Dickson that he had been sober since May 2010.  Dr. Dickson noted that the Plaintiff's mental stream was organized, his affect was appropriate for mood, and his emotional state was normal.  (Tr. at 23-524.) Dr. Dickson opined that the claimant's ability to understand, attend to, remember, and carry out instructions were not impaired.  However, his ability to respond appropriately to co-workers and supervision was mildly impaired while taking his medication and abstaining from alcohol. (Tr. at 524.)

In May 2011, Plaintiff returned to Oakland Psychological Clinic, acknowledging that he had relapsed and was not taking his medication.  (Tr. at 576.)  In an annual update completed in June 2011, Ms. Sander again assessed Plaintiff's attitude as mildly guarded and somewhat belligerent and his thought process as tangential. (Tr. at 586.)  At a session later that month, Ms. Sander observed that Plaintiff was "mildly manic today.  Had difficulty sitting throughout the

11

session and felt the need to rearrange some things in therapist's office." (Tr. at 593.)

Ms. Sander completed a Mental Residual Functional Capacity Assessment in August 2011. (Tr. at 538-539.) Therein she noted Plaintiff was markedly limited in his ability to interact appropriately with the general public, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and work in coordination or in proximity with others without being distracted by them. (*Id*.)

In July 2011, Plaintiff was evaluated by Elaine Tripi, Ph.D. (Tr. at 531-537.) Dr. Tripi noted that Plaintiff was taking Trileptal, Lithium, Trazadone and Lexapro. (Tr. at 532.) Dr. Tripi completed a Mental Residual Functional Capacity Assessment on Plaintiff, finding that he was markedly limited in his ability to maintain attention and concentration for extended periods, complete a normal workday or workweek without interruptions from psychological based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, and to accept instructions and respond appropriately to criticism from supervisors. (Tr. at 537.) Dr. Tripi also opined that Plaintiff was not a viable rehabilitation candidate and was not capable of sustaining any substantial gainful activity. (Tr. at 533.)

Dr. Tripi again clinically evaluated Plaintiff in January 2012. (Tr. 630-634.) Dr. Tripi concluded that Plaintiff continued "to be significantly impaired due to his diagnosed mental illness, Bipolar Disorder, in spite of in-patient and out-patient treatment and medication." She noted Plaintiff remained "very anxious and is not able to sit still, needing to pace throughout his

evaluation." Plaintiff reported racing thoughts and intrusive thinking despite medication. Dr. Tripi noted Plaintiff's "difficulty staying focused and concentrating even on simple tasks." (Tr. at 633.) She opined that Plaintiff "would not be able to sustain any employment situation due to his many marked impairments in functioning." (*Id*.)

Dr. Tripi completed another Mental Residual Functional Capacity Assessment in January 2012. (Tr. at 630-632.) Therein she determined that, in addition to the marked limitations noted in the 2011 assessment, Plaintiff was markedly limited in his ability to understand, remember and carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public, ask simple questions or request assistance, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. at 630-631.)

Dave Anderson, a social worker who treated Plaintiff periodically from 2007 to 2012, submitted a report regarding Plaintiff wherein he concluded that Plaintiff "is incapable of demonstrating the emotional stability, the concentration, the sustained effort and the social pragmatics sufficient to maintain employment." (Tr. at 651.) Notably, Mr. Anderson's report references and relies upon a November 2011 psychiatric evaluation conducted by Dr. Eadie, an M.D. for the Sacred Heart Rehabilitation Center. (*Id*.) That evaluation includes a status exam wherein Dr. Eadie observed Plaintiff as having a suspicious attitude, dysphoric mood, pressured speech, labile affect, agitated psychomotor behavior, loose associations (thought process) and

13

obsessive thought content. (Tr. at 653-654.)  Dr. Eadie also noted that Plaintiff was distractable, with poor insight.  (Tr. at 654.)  Dr. Eadie listed Trilepital, Lithium, Trazadone and Lexapro as Plaintiff's prescribed psychotropic medications. (Tr. at 655.)

At the administrative hearing, the ALJ asked the Vocational Expert ("VE") to consider an individual with Plaintiff's background who has no exertional limitations, but needs a job where he does not interact with the general public, where interaction with supervisors and coworkers is incidental or superficial, where he can work at his own pace–no assembly lines.  (Tr. at 115-116.)   The VE testified that such a person could perform the jobs of janitor (40,000 jobs regionally), and packer (14,000 jobs regionally) and that he could perform his past work as a CAD designer.  (Tr. at 116-117.)

The ALJ then asked the VE to consider the same hypothetical individual who needs significant direct supervison with "constant reminders." (Tr. at 118.) The VE responded that such a limitation would be work preclusive.  (*Id*.)  The VE also testified that the same hypothetical individual, with all of the above-referenced limitations, who would also be absent from work once every two weeks, would be unable to maintain competitive employment.  (*Id*.)

**F.    Analysis and Conclusions**

Plaintiff contends that the ALJ erred in finding Plaintiff was not disabled because she improperly segregated the effects of his bipolar disorder from the effects of his alcohol dependence.  (Doc. 14 at 683).  Defendant argues that the ALJ did not err because she reasonably concluded that Plaintiff's impairments, even when considered in combination, did not result in

14

a finding of disability.  (Doc. 15 at 707).

> An individual shall not be considered disabled for the purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

42 U.S.C. §423(d)(2)(C).  Plaintiff correctly notes that 20 C.F.R. §416.935 requires that the five step sequential evaluation process must be followed in the adjudication of disability "'before any consideration is given to whether drug addiction [or alcohol abuse] is the cause of such disability.'"  *Parker v. Comm'r of Soc. Sec.*, 2014 WL 902692, *9 (E.D. Mich. March 7, 2014)(quoting *Williams v. Barnhart*, 338 F.Supp.2d 849, 862 (M.D. Tenn. 2004)); *see also, Brueggemann v. Barnhart*, 348 F.3d 689, 694 (8th Cir. 2003).

To find that substance abuse is a contributing factor material to the determination of disability without first finding the plaintiff disabled "is to put the cart before the horse." *Williams*, 338 F.Supp.2d at 862.  Only if the total of a plaintiff's limitations, including the effects of substance abuse disorders, reveals that the plaintiff is disabled may the adjudicator determine if the substance abuse is a contributing factor material to the determination of disability.  *Parker*, 2014 WL 902692, at *10(citing 20 C.F.R. §§ 404.1535(a), 416.935(a)).  Then, and only then, the ALJ must consider which limitations would remain if the effects of the substance abuse were removed.  *Id.*  Accordingly, an ALJ must analyze a plaintiff's impairments "**without segregating out any effects that might be due to substance use disorders.**" *Parker*, 2104 WL 902692, at *10(emphasis in original).  The "determination must be based on substantial evidence of plaintiff's medical limitations 'without deductions for the assumed effects of substance use

15

disorders.'" *Id* (quoting *Williams*, 338 F. Supp.2d at 863 and *Brueggemann*, 348 F.3d at 694-95).

Despite Defendant's argument to the contrary, the ALJ's decision that Plaintiff is not disabled plainly manifests the improper segregation of his alcohol dependence from his bipolar disorder.  In fact, the ALJ's own words belie the argument that she did not consider Plaintiff's alcohol dependence separately from his bipolar disorder in concluding he was not disabled: "Although the claimant has alleged that his **bipolar disorder** prevents him from any gainful activity, his treatment records are not supportive.  **Instead**, they reflect sporadic treatment, **largely related to obtaining and maintaining sobriety**."  (Tr. at 52)(emphasis added).  This clear articulation of the analytical parsing of Plaintiff's bipolar disorder impairment from his alcohol dependence impairment, combined with the ALJ's failure to even acknowledge 20 C.F.R. §§ 404.1535 and 416.935 and the prescribed procedure set forth therein, reflect the ALJ's inappropriate partitioning of Plaintiff's conditions and require remand for the proper analysis under the statute and regulations governing the consideration of substance abuse. *See Parker*, 2014 WL 902692, at *11; *see also*, *Brueggemann*, 348 F.3d at 693("[T]he ALJ's failure to cite 20 C.F.R. §404.1535 anywhere in his decision was not a mere drafting oversight, but accurately reflected his failure to follow the procedures prescribed there.  The Commissioner has duly promulgated regulations in this area, which the ALJ may not silently disregard.").

Moreover, even if the ALJ had properly considered all of Plaintiff's impairments in concluding that he was not disabled, that determination would have to be supported by substantial evidence.  Plaintiff argues that the ALJ's determination that Plaintiff was not disabled is not

16

supported by substantial evidence because she improperly rejected the opinion of non-treating examiner, Elaine Tripi, Ph.D. and ignored the clinical findings from Dr. Eadie, and Plaintiff's treating social workers, which supported Dr. Tripi's opinions.

Indeed, the ALJ gave the opinions of Dr. Tripi little weight, discrediting her conclusions because her opinions and prescribed limitations were "not adequately supported by the evidence of record" and were based "largely, if not entirely, upon subjective complaints...with minimal clinical findings." (Tr. at 52.) Nevertheless, a review of Dr. Tripi's reports indicates that she based her findings on clinical interviews, observations and various diagnostic testing and assessments. (Tr. at 531-534, 633-648.)

In the area of mental impairments, clinical interviews have long been accepted as a legitimate diagnostic technique, and subjective complaints elicited during such interviews may be relied upon by doctors in formulating their opinions and functional restrictions. *Warford v. Astrue*, 2010 WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010)(citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment...consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine...In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness...When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic technique.

17

*Id* at *5-6(quoting *Blankenship*, 874 F.2d at 1121).

In finding Plaintiff markedly limited in social functioning, concentration, persistence and pace and the ability to complete a normal workday or workweek without interruptions from psychologically based symptoms, Dr. Tripi appropriately relied upon acceptable psychiatric diagnostic techniques and thus her opinions were improperly rejected by the ALJ. *See id*; *see also*, *Mullins v. Colvin*, 2014 WL 1382552, at *8 (S.D. Ohio, April 8, 2014)(ALJ erred by downgrading doctor's clinical observations of Plaintiff's psychological signs and symptoms to valueless "subjective impressions").

Additionally, and contrary to the ALJ's assessment that Dr. Tripi's opinions were not adequately supported by clinical findings or by the evidence of record, Dr. Tripi's findings were consistent with those of Plaintiff's treating social workers, Mona Sander and Dave Anderson[3], and evaluating psychiatrist, Dr. Eadie.

Mona Sander, a licensed clinical social worker who treated Plaintiff in 2010 and 2011, noted that Plaintiff's mood was depressed, anxious and irritable, his attitude was mildly guarded, his speech was loud, his motor activity was hyper and agitated, and his thought process was tangential and very fast. She further noted that he could not sit down and was pacing during the

---

[3]As conceded by Plaintiff, clinical social workers, such as Mr. Anderson and Ms. Sander, are not "acceptable medical sources" whose opinions would be binding on the ALJ under federal regulations. 20 C.F.R. §404.1513. Nevertheless, evidence from sources other than "acceptable medical sources," specifically therapists like Mr. Anderson and Ms. Sander, may be considered in determining the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. §404.1513(d)(1); *see Smith-Johnson v. Comm'r of Soc. Sec.*, ___Fed.Appx.___ (6th Cir. 2014); 2014 WL 4400999, at *8 (6th Cir., Sept. 8, 2014).

evaluation. (Tr. at 515.) In addition, his affect was noted as sad, anxious and labile and he was described as "ready to explode;" his thought content was obsessive and described as persistent. (Tr. at 516.) Ms. Sander also assessed Plaintiff as having poor coping skills and limited insight. (Tr. at 517.) In June 2011, Ms. Sander again assessed Plaintiff's attitude as mildly guarded and somewhat belligerent and his thought process as tangential. (Tr. at 586.)

In the Mental Residual Functional Capacity Assessment Ms. Sander completed on August 2011, she noted Plaintiff was markedly limited in his ability to interact appropriately with the general public, ask simple questions and request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and work in coordination or in proximity with others without being distracted by them. (*Id.*)

Dave Anderson, a social worker who treated Plaintiff periodically from 2007 to 2012, remarked in a letter regarding his treatment status that Plaintiff "is incapable of demonstrating the emotional stability, the concentration, the sustained effort and the social pragmatics sufficient to maintain employment." (Tr. at 651.) Notably, Mr. Anderson's letter references and relies upon a November 2011 psychiatric evaluation conducted by Dr. Eadie. (*Id.*) That evaluation includes a status exam wherein Dr. Eadie observed Plaintiff as having a suspicious attitude, dysphoric mood, pressured speech, labile affect, agitated psychomotor behavior, loose associations (thought process) and obsessive thought content. (Tr. at 653-654.) Dr. Eadie also noted that Plaintiff was distractable, with poor insight. (Tr. at 654.)

19

The ALJ seemingly disregarded Dr. Eadie's findings because they were based on a single evaluation. (Tr. at 52.)   Yet the Sixth Circuit has validated the diagnosis of a psychiatrist made after only one interview, even where no psychological testing was conducted. *Blankenship*, 874 F.2d at 1121; *see also, Warford,* 2010 WL 3190756, at *6.  The clinical findings and assessments of Dr. Eadie, Mr. Anderson and Ms. Sander are all consistent with the opinions of Dr. Tripi, and contradict that of Dr. Dickson, to which the ALJ gave great weight.  Notably, the ALJ endorsed Dr. Dickson's conclusions because they were consistent with Plaintiff's "limited and sporadic treatment history."  (Tr. at 51.)   However, plaintiffs suffering from mental impairments, particularly bipolar disorder, should not be penalized for failure to seek psychiatric treatment. *See Kangail v. Barnhart*, 454 F.3d 627, 631 (7th Cir. 2006)(bipolar disorder may prevent the sufferer from taking her prescribed medications or otherwise submitting to treatment); *see also, Blankenship*, 874 F.2d at 1129("Appellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").   Here, Plaintiff did not eschew treatment; at worst, he demonstrated the tendency for relapse that is a hallmark of his bipolar disorder.  *See Kangail*, 454 F.3d at 631.

Accordingly, the ALJ erred in dismissing the findings of Dr. Eadie and in ignoring the records of Ms. Sander and Mr. Anderson in her determination that Dr. Tripi's opinions were not supported by clinical findings or by the evidence of record, and in adopting the conclusions of Dr. Dickson based upon Plaintiff's ostensibly limited and sporadic treatment history.  I therefore

recommend the case be remanded under sentence four of 42 U.S.C. § 405(g) to give the ALJ an opportunity to conduct the proper evaluation of all of the medical opinion evidence[4] and the appropriate analysis under the statute and regulations governing the consideration of substance abuse. Given the foregoing conclusion, Plaintiff's remaining argument regarding the adequacy of the ALJ's RFC assessment and hypothetical need not be addressed.

## III.   **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue

---

[4]I note that obtaining the records of treating psychiatrist, Dr. Gerald Pope, in a legible format, may aid the ALJ on remand.

contained within the objections.


                                          s/ 𝕮𝖍𝖆𝖗𝖑𝖊𝖘 𝕰 𝕭𝖎𝖓𝖉𝖊𝖗
                                        CHARLES E. BINDER
Dated: September 25, 2014               United States Magistrate Judge


21